IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AFC ENTERPRISES, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE HEARST CORPORATION, and its Wholly Owned Subsidiary Divisions, KING FEATURES SYNDICATE, INC., and HEARST HOLDINGS, INC, <br><br> Defendants. | CIVIL ACTION NO. 1:11-CV-4150 |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER

Defendants The Hearst Corporation ("Hearst"), King Features Syndicate, Inc. ("KFSI"), and Hearst Holdings, Inc. ("HHI") (collectively, "Defendants"), respectfully move this Court to dismiss the Complaint filed by Plaintiff AFC Enterprises, Inc. ("AFC") for lack of subject matter jurisdiction, or to exercise its discretionary authority to decline jurisdiction under the Declaratory Judgment Act. Defendants further move this Court to dismiss for: (1) Plaintiff's failure to establish a *prima facie* case of personal jurisdiction or venue, (2) a lack of personal jurisdiction, and (3) improper venue or, alternatively, to transfer this case to the Southern District of New York.

## I.   **PRELIMINARY STATEMENT**

This is a purported declaratory judgment action involving licensing agreements and amendments spanning nearly forty years and licensing intellectual property related to the Popeye cartoon character.  Plaintiff seemingly filed this action using a hypothetical dispute to gain leverage over Defendants in contractually-required negotiations later this year.  Plaintiff's Complaint asks this Court to relieve AFC from its contractual promise "to commence good faith negotiations regarding a further extension" of the parties' intellectual property license by June 1, 2012, and seeks further advisory opinions from the Court concerning the respective rights of the parties after December 31, 2012 **if** the parties do not commence good faith renewal negotiations, **if** they fail to reach agreement on an extension, **if** AFC ceases to use all of Defendants' characters, and **if** one or more of the Defendants object should AFC continue to use the Popeyes name in an as-yet-unspecified manner.  Plaintiffs have filed this speculative case in Georgia, notwithstanding the lack of personal jurisdiction over at least some—if not all—of the Defendants, notwithstanding the fact that New York would be the proper forum if and when an actual controversy arises between the parties. This action should be dismissed because there is no Article III jurisdictional basis for this Court to issue an advisory opinion based on hypothetical facts that may never

materialize.  Even if jurisdiction were technically proper, this Court should decline to exercise jurisdiction under the Declaratory Judgment Act due to the contingent nature of Plaintiff's claims.

This case also should be dismissed for lack of personal jurisdiction.  The Complaint names three Defendants, lumping them together and denominating them collectively as "Hearst," despite the fact they are distinct legal entities, that one of them owns the Popeye copyright, that a separate one owns the trademarks and is the party to the most-recent agreement, and despite the fact that the agreement with respect to which Plaintiff seeks a declaration of rights was only executed by one of them.  None of the Defendants are subject to personal jurisdiction under Georgia's Long Arm Statute and the Due Process Clause of the United States Constitution.  At least two Defendants have no connection with Georgia, while the other's contacts are too attenuated as to satisfy jurisdictional requirements.  Absent joinder of all Defendants, Fed. R. Civ. P. 19 provides additional grounds for dismissal if all three Defendants are determined to be indispensable parties.

Even if the Court finds that it has both subject matter jurisdiction and personal jurisdiction over some or all Defendants, the Court should still dismiss the action for lack of venue or transfer the action to the Southern District of New York, which is both the proper venue for this action and the most convenient forum

for the adjudication of this dispute.  Because not all Defendants—or any of them—are subject to personal jurisdiction in Georgia, and nothing giving rise to this action took place in Georgia, venue is not proper.  The Southern District of New York is the most appropriate venue for this matter because all of the agreements at issue are governed by New York law, all Defendants are subject to jurisdiction in New York, in-person meetings between the parties occurred in New York (and included Plaintiff's former president who now is located near Boston), and New York courts are familiar with the nuances of that state's contract law.  Further, Georgia has only a minimal role in the history of the agreements, beginning twenty years after the first agreement with AFC's incorporation in Minnesota and opening of a Georgia office in the 1990's.  In contrast, the preceding contractual relationship began while Defendants were headquartered in New York, where they remain to this day, and Plaintiff's predecessors from Louisiana, a civil law jurisdiction.  A transfer under § 1404(a) would also render many serious procedural issues, including personal jurisdiction, moot.  For these reasons, Defendants' motion should be granted.

## II.  <u>FACTUAL BACKGROUND</u>

The world famous and iconic sailorman "Popeye" was created by E.C. Segar on January 17, 1929.  King Features Syndicate, Inc. owns the copyright to Popeye and licenses the rights to the King Features Syndicate Division of Hearst Holdings, Inc, which is the owner of the Popeye trademarks.[1]  The Popeye cartoon, and associated intellectual property rights, are among the most valuable in the world.

Plaintiff's Popeyes quick service restaurants ("Popeyes Restaurants") were founded in Louisiana in 1972 when Alvin C. Copeland opened a restaurant called "Chicken on the Run."  Copeland later renamed the restaurant "Popeyes," precipitating a claim by Hearst for infringement.  On March 11, 1976, as part of a settlement agreement, Copeland licensed from Hearst intellectual property rights related to the Popeye character and name (the "Original 1976 Agreement").  Over more than three decades, approximately twelve different amendments and renewals occurred, each incorporating by reference all prior agreements.  The current renewal was executed on November 30, 2009 (the "Agreement") and extends through December 31, 2012.  In-person meetings between the parties took place in New York, and included Plaintiff's former president, who now resides outside of Boston.  (McCloat Dec. ¶ 9)

---

[1] The rights were previously licensed by KFSI to Hearst Corporation, but in 1997, the license was assigned by Hearst to HHI.

Every one of the amendments and extensions is governed by New York law, and a majority of them were consummated with Plaintiff's predecessors based in Louisiana. The current Agreement requires the parties "to commence good faith negotiations regarding a further extension of the term of the Domestic and International Agreements on or before June 1, 2012." Agreement ¶ 7.

Rather than honor its agreement to engage in good faith negotiations, Plaintiff filed this lawsuit in December 2011. The Complaint does not allege that there is an adversarial conflict, dispute, or controversy between the parties, let alone one of sufficient immediacy and reality to authorize the declaratory relief sought by Plaintiff. Plaintiff filed this action without any prior notice to or provocation from Defendants, who have not made any representations or taken any position regarding any future actions concerning Plaintiff's use of the Popeyes name today or after the expiration of the Agreement. There are no allegations about any threat of imminent injury of any kind to Plaintiff. [2]

---

[2] Plaintiff does reference a letter from September 5, 2001, written more than a decade ago, prior to the Agreement at issue in this case. In that correspondence, the President of HHI's King Features Division, T.R. Shepard III, forwarded to Popeyes Restaurant's then-President, Jon L. Luther, a memorandum prepared by Hearst's counsel (the "2001 Memo"). This decade-old correspondence does not threaten any action against Plaintiff. It has not been referenced by either of the parties in recent history until the Complaint was filed.

## III.   ARGUMENT & CITATION OF AUTHORITY

The Complaint effectively seeks an advance legal opinion from this Court relieving Plaintiff from its contractual promise "to negotiate for" or to renew any licensing agreement under a long list of hypothetical contingencies.  The absence of an actual present case or controversy deprives this Court of subject matter jurisdiction, and in any event counsels strongly against exercising the Court's discretionary jurisdiction.  In addition, the Court lacks personal jurisdiction and venue over Defendants and should transfer the action to the Southern District of New York should it decline to dismiss it.

### A.   There Is No Case or Controversy Here

Article III of the Constitution requires that a case or controversy exist before a court may exercise jurisdiction over a matter and is meant to prohibit parties from seeking advisory opinions from courts.  "Based on the facts alleged, there must be a substantial continuing controversy between two adverse parties. The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1347 (11th Cir. 1999).  The Declaratory

Judgment Act, 28 U.S.C. §§ 2201-02, is not an independent basis of subject matter jurisdiction; rather, it "requires that the plaintiff allege facts showing that the controversy is within the court's original jurisdiction." *Household Bank v. JFS Group*, 320 F.3d 1249 (11th Cir. 2003); *see also Md. Cas. Co. v. Pac. Oil Co.,* 312 U.S. 270, 273 (1941) (declaratory relief requires a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment").[3]   The existence of a controversy is measured at the time of the filing of the declaratory judgment action. *GTE Directories Publ'g Co. v. Trimen Am., Inc.*, 67 F.3d 1563, 1568 (11th Cir. 1995).

In intellectual property declaratory judgment matters, an "affirmative act" by the declaratory judgment defendant is required before a case or controversy can exist.[4]  *Sandisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir.

---

[3] In considering a motion to dismiss for lack of subject matter jurisdiction, a district court may consider facts outside of the pleadings. *Muhammad v. HSBC Bank USA, N.A.*, 399 Fed. App'x 460, 462 (11th Cir. 2010).

[4] While in *MedImmune, Inc. v. Genentech, Inc.*, the Supreme Court rejected the notion that "apprehension of suit" was absolutely required in a patent case, the Court reiterated the long-held rule that a dispute "under all the circumstances" necessarily be "definite and concrete, touching the legal relations of the parties having adverse legal interests; and that it be real and substantial, and admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." 549 U.S. 118, 127 & 132 n.11, 127 S. Ct. 764, 771 & 774 n.11, 166 L. Ed. 2d 604, 614-15 & 618 n.11 (2007) (alteration in original) (citations omitted) (internal quotation marks omitted).

2007) ("[D]eclaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, *without some affirmative act by the patentee*." (emphasis added)).

Plaintiff's complaint fails to allege facts giving rise to an actual case or controversy, as it relies on Plaintiff's own threatened anticipatory breach of its promise to engage in good-faith negotiations before June and asks for a determination of the parties' respective rights after the current agreement expires at the end of the year and based on hypothetical facts that may never arise.

*Wendy's Int'l, Inc. v. City of Birmingham*, 868 F.2d 433 (11th Cir. 1989), is instructive.   In that case, plaintiffs sought a declaratory judgment that potential use of eminent domain was unconstitutional, despite a required eight-month negotiation period with developers, followed by four months of local government discussions before the eminent domain power at issue became exercisable. *Id.* at 436.  The Eleventh Circuit concluded that the "threat of condemnation simply is *too attenuated to stir up an actual controversy." Id.*

Plaintiff's claim here for declaratory judgment, as in *Wendy's*, is premised on multiple layers of equally futuristic hypothetical scenarios.  Measured from the date of filing the complaint, Plaintiff's scenario becomes reality only: if the parties

are unable to negotiate in good faith for extension by June 1, 2012, more than six months in the future; if the intellectual property license is allowed to expire without extension, more than one year later; if Plaintiff continues to use the current name of Popeyes Restaurants after expiration; if Plaintiff discontinues use of all Popeye characters worldwide; if Defendants make a future claim that Popeyes Restaurants infringe on Defendants' intellectual property rights absent extension of the Agreement; and if many other conditional events that may never occur actually materialize.  Rather than serving as a resolution of actual, pending controversy of a dispute between the parties, any order purporting to declare the rights of Plaintiff and Defendants in this action would, instead, be "an opinion advising what the law *would be* on a *hypothetical* state of facts."  *GTE*, 67 F.3d at 1569 (emphasis added) (*citing Aetna Life Ins. Co v. Haworth*, 300 U.S. 227, 240-41 (1937)).

In addition, the Eleventh Circuit has held that where a yet to occur course of events may obviate the potential litigation feared by the declaratory judgment action, the requisite controversy does not exist.  *Hendrix v. Poonai*, 662 F.2d 719 (11th Cir. 1981).  *Hendrix* involved a counterclaim by a hospital board for declaratory judgment seeking immunity from a potential lawsuit for antitrust violations that may have arisen from the hospital's anticipated denial of a doctor's

application for privileges *Id.* at 720-21.  The Court concluded that the requisite

controversy was absent, reasoning that

> [t]he hypothetical nature of the dilemma alleged by the
> appellants is made clear by the fact that if Dr. P. V.
> Poonai's readmission application is approved (and we
> must assume that it might be), the potential for further
> antitrust litigation against the appellants no longer will
> exist.  In essence, the appellants are seeking a declaration
> that if they deny appellee's readmission application, and
> if the appellee subsequently brings an antitrust action
> based on that denial, then the appellants will be protected
> from liability.

*Id.* at 722.  Similar to the hospital board, Plaintiff seeks an improper advisory

opinion about its legal rights and obligations if a litany of uncertainties become a

reality.  Defendants have made no threat of litigation regarding the Agreement or

Plaintiff's conduct; indeed, the parties have not engaged in any discussions

regarding the extension or termination of the Agreement, or permissible conduct or

usage of intellectual property following expiration of the Agreement without

extension or renewal.

Plaintiff's attempt to create a controversy through its own threatened

anticipatory breach of its promise to negotiate before June should be rejected.  The

only court Defendants are aware of to have faced such an argument flatly rejected

it.  *See Powers v. U.S. Home Corp.*, 2010 WL 605727, at *4-*5 (D. Md. 2010)

(unpublished) (concluding that "[p]laintiffs may not manufacture a dispute by

imagining circumstances in which [they] could be affected" and refusing to recognize that a "theory of anticipatory breach" created standing) (quotations omitted).

### B.   Even If Constitutional Requirements Had Been Met, the Court Should Decline to Exercise Jurisdiction under the Declaratory Judgment Act

The Declaratory Judgment Act only grants federal courts discretion that *may* be exercised to make a declaration of rights in its discretion; "it does not impose a duty to do so." *Americas Variable Life Ins. Co v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005).  The Eleventh Circuit has expressly authorized district courts presented with declaratory judgment actions to "take into consideration the *speculativeness of the situation before them* and the adequacy of the record for the determination they are called upon to make, as well as other factors."[5] *Angora Enters., Inc. v. Condominium Ass'n of Lakeside Village, Inc.*, 796 F.2d 384, 387 (11th Cir. 1986); *see also Bio-Medical Applications of Ga., Inc. v. City of Dalton*,

---

[5]  In the instant action, the only acts even suggesting that a justiciable case or controversy may develop are those of the Plaintiff, further demonstrating the inappropriately speculative nature of this suit.  Rather than abide by its previous commitment to negotiate in good faith to secure an extension of the Agreement, Plaintiff asks this court to interpret its obligations based on one of many potential courses of action available to it.  Other Courts observing these contrived tactics have appropriately given such antics little or no weight in analysis of similar constitutional issues.  *See, e.g.*, *Powers*, 2010 WL 605727, at *4-*5. This Court should do the same in its analysis under the Declaratory Judgment Act.

685 F. Supp. 2d 1321, 1356 n.30 (N.D. Ga. 2009) (declining to exercise jurisdiction over a declaratory judgment, in part, because of speculation inherent in both a patient's medical condition and Medicare coverage).

Defendants submit that the Court can only conclude that "there is as yet no controversy here ripe for adjudication," *Wendy's Int'l*, 868 F.2d at 436, because Plaintiff's claim for declaratory relief is based on "hypothetical facts or speculative contingencies." *Powers,* 2010 WL 605727 (*quoting In re HA 2003, Inc.,* 310 B.R. 710, 721 (Bankr. N.D. Ill. 2004) (finding no subject matter jurisdiction where plaintiff asked the court for declaration of reasonableness of a settlement agreement that had not yet been signed by parties)).  While this likely deprives the Court of subject matter jurisdiction, Defendants additionally ask the Court to decline to exercise jurisdiction on a more narrow ground:  Plaintiff's claims are premature, speculative, uncertain, and contingent upon events that have not yet and may never occur.  This Court should refuse Plaintiff's invitation to render an advisory opinion or otherwise fill a role better suited for legal counsel.

## C.   Plaintiff Has Not Properly Pled Personal Jurisdiction Under Georgia's Long-Arm Statute, and Multiple Defendants are Not Subject to Personal Jurisdiction in this Court

Plaintiff, as the party "seeking the exercise of personal jurisdiction over a nonresident defendant, bears the initial burden of alleging in the complaint

sufficient facts to make out a prima facie case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l*, 593 F.3d 1249, 1257 (11th Cir. 2010). Plaintiff has failed to meet even this initial burden. All allegations in support of the exercise of personal jurisdiction are directed at "Hearst," a term Plaintiff defined to include all three Defendants collectively. Each Defendant is entitled to a determination whether it, individually, is subject to personal jurisdiction in this Court, as "[i]t is well established that as long as a parent and a subsidiary are separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000); *Jimmy Smith Racing Tires, Inc v. Albert Ashleman*, 2006 U.S. Dist. LEXIS 66964, at *24 (N.D. Ga. Sept. 19, 2006) (unpublished) ("The plaintiff lumps the three defendants together, asserting jurisdiction over all of them, rather than identifying each actor's contacts with Georgia."). Without making specific allegations as to each Defendant, Plaintiff fails to establish a *prima facie* case for the exercise of personal jurisdiction, and many of the collective allegations amount to legal argument and conclusions rather than the required *facts*. Even assuming that Plaintiff has met the pleading standard, none of the Defendants has sufficient contacts to justify an exercise of jurisdiction over them

in this forum, as shown by evidence rebutting Plaintiff's jurisdictional allegations. (McCloat Dec.; Bostron Dec.)

To the extent that Plaintiff alleges that Defendants are subject to general jurisdiction for contacts unrelated to activities in the forum, its argument is flawed. General jurisdiction requires that "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Goodyear Dunlop Tires Operations v. Brown*, ___ U.S. ___, ___, 131 S. Ct. 2846, 2853 (2011) (quotations omitted).  For corporations, "the paradigm forum for the exercise of general jurisdiction . . . is [a] . . . place . . . in which the corporation is fairly regarded as at home," such as place of incorporation or principal place of business.  *Id.* at 2853-54.  Plaintiffs' allegations do not come close to this standard. Further, none of these entities are registered foreign corporations with the Georgia Secretary of State.  None have any employees regularly stationed in Georgia, maintain any offices in this state, or have any interests in Georgia real estate. Neither Hearst nor KFSI derive any revenue from Georgia, and HHI attributes only 2.2% of its revenue to Georgia.[6]  (McCloat Dec. ¶ 6; Bostron Dec. ¶ 6)

---

[6] This small figure cannot possibly cause HHI to be subject to general personal jurisdiction in Georgia.  If a company's revenues were distributed evenly across all 50 states, only 2% of a company's revenue would be attributable to each state.

With respect to specific jurisdiction, Plaintiff's jurisdictional allegations reference the Defendants' collective activities with respect to the Agreement, although only *one* of the *three* Defendants was actually a signatory:  HHI.  Doc. 1, Attach. 2 at 4.[7]   And as to the Agreement, the only contacts alleged in the complaint are the fact that "Hearst" negotiated the agreement with a Georgia entity and has corresponded with the Georgia entity regarding the agreement (Complaint ¶¶ 10-14), which is not sufficient to give rise to personal jurisdiction over all Defendants under Constitutional Due Process.[8]  *See, e.g.*, *Allegiant Physicians Servs., Inc. v. Sturdy Mem'l Hosp.*, 926 F. Supp. 1106 (N.D. Ga. 1996) (no

---

With Georgia's revenue only slightly above that average figure, this alone cannot be the basis for the assertion of general personal jurisdiction.

[7] The same is true for the 2007 Amendment, *id.* at 67, and the 2002 Amendment, *id.* at 60.  The 2003 Letter Agreement, which only adjusted calculation of an annual fee, *id.* at 61, was authored by a unit or division of Hearst, and the July and December 1995 Agreements were executed only by Hearst, not KFSI.  Any contracts executed prior to this date, regardless of the companies involved, precede Plaintiff's incorporation date, involvement in the agreements, or establishment of its present location in Atlanta, Georgia.  KFSI's motion to dismiss for lack of personal jurisdiction should be granted.

[8] While under the Georgia Long Arm Statute "postal, telephone, and other intangible Georgia contacts suffice to bring [a defendant] within the purview of [§ 9-10-91(1)]," *TRS & Assocs. v. Document Imaging Techs., Inc.*, 2009 U.S. Dist. LEXIS 76705, at *20 (N.D. Ga. Aug. 25, 2009) (unpublished) (second alteration in original), separate and apart from that statutory analysis is whether the exercise of personal jurisdiction comports with Constitutional Due Process, *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1258-59 (11th Cir. 2010) (noting that Courts must ensure that "the Due Process Clause of the Fourteenth Amendment to the United States Constitution" is not violated).

personal jurisdiction in contract case where all contract negotiations occurred in Massachusetts or by telephone and mail, defendant did not travel to Georgia, and contract contained Massachusetts choice of law provision); *see also Nicholas v. Buchanan*, 806 F.2d 305, 307 (1st Cir.1986) (mail and telephone communications to entity in state insufficient); *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983) (same); *Scullin Steel v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 314 (8th Cir.1982) (same).

For the reasons above, the Court should dismiss the case for lack of personal jurisdiction or at least order Plaintiff to set forth facts establishing a *prima facie* case of personal jurisdiction against each defendant so that they may have a proper opportunity to rebut those allegations.

### D.  In the Absence of Certain Defendants, this Action Should Be Dismissed Under Rules of Joinder

The lack of personal jurisdiction over Defendants also triggers significant joinder concerns, thereby justifying dismissal of this action or, alternatively, transfer to the Southern District of New York where complete relief can be had between the parties, as discussed in the next Part.   For example, KFSI is the owner of the copyright to Popeye the cartoon and associated characters, and Defendant HHI owns trademarks relating to the characters.  The declaratory judgment Plaintiff seeks has significant impact on KFSI and HHI, meaning these Defendants

should be considered indispensable parties. See *First Fin. Mktg. Servs. Grp., Inc. v.*

*Field Promotions, Inc.*, 286 F. Supp. 295, 298 (S.D.N.Y. 1968) (finding a

copyright owner an indispensable party in a declaratory judgment action where

"the validity of the . . . copyright could be affected adversely"). This Court cannot,

in the absence of KFSI or HHI, "accord complete relief" among remaining parties

by declaring whether Plaintiff's hypothetical course of action infringes the rights of

KFSI and HHI.  Fed. R. Civ. P. 19(a)(1)(A).  Further, adjudication of the propriety

of Plaintiff's conduct in the absence of KFSI or HHI would "impair or impede"

those entities' ability to protect intellectual property interests and create a risk of

"inconsistent obligations."  *Id.* 19(a)(1)(B)(i)-(ii).[9]

---

[9] Whatever the determinations on personal jurisdiction and venue, the Court must consider, as a consequence of those contingencies, "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed" after Defendants required to be joined are no longer a party to the action.  *Id.* 19(b).  A judgment in the absence of all Defendants would be inadequate and prejudicial to the parties, and likely require subsequent litigation of any outcome unfavorable to Defendants.  These detriments and prejudice cannot be lessened or avoided by any protective measures or tailored relief by this Court. Further, an alternative could provide Plaintiff, at a more appropriate future juncture, the relief it seeks: a suit in the Southern District of New York where all Defendants—and even Plaintiff—are subject to personal jurisdiction.  Defendants ask this Court to consider joinder problems resulting from its ruling on jurisdiction and order supplemental briefing to the extent helpful to the Court.

**E.**  **Venue is Either Not Proper for All Defendants, or the Entire Action Should Be Transferred to the Southern District of New York**

1.  Venue is Not Proper in This Court

Venue must be established over each Defendant, not merely Defendants collectively as a whole. *See Delong Equipment Co. v. Washington Mills Abrasive Co.,* 840 F.2d 843, 855 (11th Cir. 1988). Because Plaintiff has based jurisdiction in this case on diversity of citizenship, 28 U.S.C. § 1332(a), venue is governed by § 1391(a), which provides three possible bases for venue. 28 U.S.C. § 1391(a)(1-3).

First, § 1391(a)(3) is inapplicable because this action could have been filed at the outset in the Southern District of New York, where all three Defendants reside for purposes of venue. Because there is at least one other district where this action might have been brought, venue cannot rest on § 1391(a)(3). The remaining two venue provisions implicate Defendants' arguments concerning personal jurisdiction, as "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *Id.* § 1391(c). At least one of the Defendants has insufficient contacts with Georgia to be subject to personal jurisdiction; accordingly, not "all defendants reside in the same state." *Id.* at § 1391(a)(1). Therefore, venue cannot be premised on § 1391(a)(1). As for the only remaining provision, § 1391(a)(2),

this cannot be satisfied for all Defendants.  For venue to be proper in this action under this provision, "a substantial part of the events or omissions giving rise to the claim" must have occurred in the Northern District of Georgia.  *Id.* § 1391(a)(2).  They did not.

The text of § 1391(a)(2) is to be read restrictively, as the Eleventh Circuit has explained that "[o]nly the events that directly give rise to a claim are relevant.  And of the places where the events have taken place, only those locations hosting a "substantial part" of the events are to be considered."  *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003).  This venue provision has also been held to "require courts to focus on relevant activities of the defendant, not of the plaintiff."  *Id.*, 321 F.3d at 1371-72.  Plaintiff has been incorporated only since 1992.  No meetings between the parties occurred in Georgia.  KFSI is not a signatory to any agreement with Plaintiff that originated or was performed in Georgia.  The 2003 Letter Agreement of a limited scope aside, the last agreement of a significant scope that Hearst executed was the 1995 Agreement.  The same arguments supporting a lack of personal jurisdiction in Georgia also demonstrate that venue is not proper in this district for these claims against Defendants.  Therefore, no "substantial part of the events or omissions giving rise to" Plaintiff's claims against these Defendants arose in the Northern District of Georgia. § 1391(a)(2).

Additionally, and for all Defendants, Plaintiff has not established a *prima facie* case of venue. *Delong*, 840 F.2d at 845 ("In the context of such motions in which no evidentiary hearing is held, the plaintiff must present only a prima facie showing of venue and personal jurisdiction."). Again "lumping" Defendants together for purposes of alleging facts in support, Plaintiff's essential basis for venue is that events surrounding the Agreement "were all made through correspondence and other contracts with AFC, *while AFC was located in the State of Georgia.*" Complaint ¶ 9. While Defendants dispute of the accuracy of those claims, other courts in this Circuit have noted that such electronic contacts are not dispositive to the issue of venue. *See Watson v. Cmty. Educ. Ctrs., Inc.*, 2011 U.S. Dist. LEXIS 89520, at *10-*11 (M.D. Fla. Aug. 11, 2011) (unpublished) (finding venue improper in Florida where, among many other activities occurring in New Jersey, "telephone negotiations and e-mails to Plaintiff *originated in New Jersey*" (emphasis added)). Importantly, in-person negotiations between the parties have occurred in New York. (McCloat Dec. ¶ 9) No "substantial part of the events or omissions giving rise to the claim occurred" and no "substantial part of property that is the subject of the action is situated" in this district. Accordingly venue is not proper in this Court.

2.   This Action Should Be Transferred to the Southern District of New York for the Convenience of Parties and Witnesses, and in the Interests of Judicial Economy and Justice

In addition to Defendants' other arguments, the Northern District of Georgia remains an inappropriate or inconvenient forum for the resolution of this action. Accordingly, Defendants alternatively propose that this action be transferred to the Southern District of New York for the convenience of the parties and witnesses, and in the interests of justice and judicial economy.  28 U.S.C. § 1404(a).  The Eleventh Circuit has identified nine factors relevant to analyzing a motion to transfer venue under § 1404(a):

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.,* 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

Applying these components to the instant case, certain factors are so heavily in favor of the Southern District of New York that transfer must be permitted, especially weighed against numerous considerations that are neutral as between Georgia and New York forums.  Courts have recognized the "advantage of having

a case decided by federal judges who are familiar with the controlling state law."[10]

Plaintiff was not located in Atlanta when many of the contracts preceding the

Agreement and amending the Original 1976 Agreement were entered.  In contrast,

Defendants were, and still are, headquartered in New York.  The locus of operative

facts is more likely New York than Georgia, as the only connection to this district

for many Defendants is Plaintiff's decision to locate to and file suit in this forum.

Overall, many factors in the Eleventh's Circuit test under § 1404(a) are

neutral between Georgia and New York.[11]  Traditional deference to Plaintiff's

---

[10] *First Fed. Sav. & Loan Ass'n of Warner Robbins, Ga. v. Berger*, 672 F. Supp. 1454, 1458 (M.D. Ga. 1987); *see also Zurich Am. Ins. Co. v. Renasant Ins. Co.*, 2011 U.S. Dist. LEXIS 17641, at *19 (M.D. Fla. Feb. 23, 2011) (unpublished) ("As a practical matter, a district court located in Florida and routinely applying Florida law can more appropriately apply Florida law than a district court located in another state."); *Watson*, 2011 U.S. Dist. LEXIS 89520, at *17 (M.D. Fla. Aug. 11, 2011) (unpublished) ("[W]hile the Court is competent to apply foreign law, the most appropriate court to apply New Jersey state law is the District Court of New Jersey."). The Agreement will be governed by New York law and its many nuances, rather than Georgia law with which the Court is likely the most familiar. *AFC Enters., Inc. v. Diversified Food & Seasonings, Inc.*, 1:09-CV-0416, at 16 (N.D. Ga. May 5, 1997) (unpublished) (transferring a case to Louisiana after recognizing "real and important" differences in that forum's law); *Boone v. Corestaff Support Servs.*, 2011 U.S. Dist. LEXIS 61666, at *16-*17 (N.D. Ga. June 9, 2011) (declining to exercise jurisdiction under the Declaratory Judgment Act where Delaware law applied because "the District Court for the District of Delaware is more familiar with that state's substantive law and is in a better position to interpret and apply it").

[11] As to the second factor, location of evidence and access to proof, Plaintiff is headquartered in Atlanta and likely maintains relevant documents and evidence in Georgia, while Defendants operating in New York have similarly important items

chosen forum has been eroded by equitable observations by other courts, and Plaintiff's premature filing of this action amounts to equivalent conduct, reducing the weight afforded this factor accordingly.  In contrast, several other important considerations, specifically the forum's familiarity with governing law and the associated increases in efficiency, heavily favor a New York forum for a dispute governed by New York law.  This is especially true where, as here, doubts exist as to personal jurisdiction and venue.  *Delong*, 840 F.2d at 857 ("[A]n important consideration in deciding appropriate venue is whether a forum can meet the personal jurisdiction and venue requirements for most or all of the defendants in a multi-party lawsuit."); *Universal Turbine Parts, Inc. v. Putnam County Nat'l Bank*, 2009 WL 1357386, at *3 (M.D. Ala. May 14, 2009) (unpublished) (transferring an action, in part, because "venue here [in Alabama] is dubious, suggesting that transfer to the Southern District of New York, where venue is clearly proper, would serve the interests of justice").  Accordingly, transfer of this action to the Southern District of New York is warranted.

---

in that district.  Accordingly, this factor is neutral between the parties because each side would be inconvenienced by locating items in the opposing party's district.  Under this same reasoning, the first and third factors, convenience of witnesses and the parties, respectively, are also neutral.  Compulsory process over witnesses is equal between a district Court in Georgia and New York.  Finally, the means of the parties is also neutral, as both companies are international corporations with sufficient means.

IV.   **<u>CONCLUSION</u>**

For all the reasons set forth above, Defendants' motion should be granted.


Dated:       January 23, 2012          By: **s/ J. Allen Maines**
                                        J. Allen Maines
                                        Georgia Bar No. 466575
                                        PAUL HASTINGS LLP
                                        600 Peachtree Street, N.E.
                                        Suite 2400
                                        Atlanta, GA  30308-2222
                                        Telephone:1(404) 815-2400
                                        Facsimile: 1(404) 815-2424

                                        Attorneys for Defendants
                                        *The Hearst Corporation; King Features*
                                        *Syndicate, Inc.; and Hearst Holdings, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

AFC ENTERPRISES, INC.,

       Plaintiff,

v.

THE HEARST CORPORATION, and its
Wholly Owned Subsidiary Divisions,
KING FEATURES SYNDICATE, INC.,
and HEARST HOLDINGS, INC,

       Defendants.

CIVIL ACTION NO. 1:11-CV-4150

## CERTIFICATE OF SERVICE &
## CERTIFICATE OF CONFORMANCE WITH N.D. GA. L.R. 5.1B

I hereby certify that on the date below, I served a true and exact copy of the

foregoing *Defendants' Motion to Dismiss or, Alternatively, to Transfer* and

*Defendants' Memorandum of Law in Support of Motion to Dismiss or,*

*Alternatively, to Transfer*, which were prepared with one of the font and point

selections approved by the Court in N.D. Ga. L.R. 5.1B, upon counsel for Plaintiff

via electronic delivery, as follows:

C. Neal Pope, Esq.
George W. Walker, III, Esq.
Wade H. Tomlinson, III
1111 Bay Avenue, Suite 450
Columbus, GA 31901

Jay F. Hirsch, Esq.
3455 Peachtree Road, N.E.
Suite 925
Atlanta, Georgia 30326


Dated:        January 23, 2012          By: **s/ J. Allen Maines**
                                              J. Allen Maines